**Opinion issued December 30, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00101-CV

_____

## IN THE INTEREST OF P.H.R., A MINOR CHILD

**On Appeal from the 146th District Court**
**Bell County, Texas[1]**
**Trial Court Case No. 235938**

## MEMORANDUM OPINION

Anuradha Datta (Mother) and Heathcliff Rubio (Father) are the parents of

P.H.R., a minor child. Datta, who is appealing the order modifying

conservatorship, contends that the trial court abused its discretion in granting the

---

[1] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Third District of Texas to this Court pursuant to its docket equalization powers. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013) ("The supreme court may order cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer.").

motion because the trial court did not expressly find the existence of a condition supporting modification and there is insufficient evidence that modification is in P.H.R.'s best interest. We affirm.

## Background

In June 2009, the trial court entered an order in a suit affecting the parent-child relationship granting Datta and Rubio[2] joint managing conservatorship of their daughter, P.H.R., and giving Datta the exclusive right to determine the child's primary residence without regard to geographic location.

The undisputed record from the three-day hearing on the petition to modify (April 17, 2013, June 26, 2013, and July 5, 2013) reflects that Datta, P.H.R., and Rubio lived in Killeen, Texas, when the June 2009 order establishing conservatorship was signed. Four months later, in November 2009, Datta and P.H.R. moved to Kentucky where Datta took a job with the U.S. Department of Defense. Mother and daughter relocated to Corpus Christi, Texas in the early fall of 2011 after Datta was promoted at work. Datta had difficulty securing permanent, suitable daycare for P.H.R. in Corpus Christi due to her work schedule (6 a.m. to 2:30 p.m.).

In April or May 2012, Datta informed Rubio of her difficulties and asked if he would be able to take P.H.R. while she looked for adequate daycare in Corpus

---

[2]     Datta and Rubio were never married.

Christi. After Rubio informed her that he could not care for P.H.R. because he would be working out of state, Datta sent the girl to live with Datta's parents in Tennessee. The record reflects that P.H.R. lived with her maternal grandparents in Tennessee from May 2012 until she returned to Texas in October 2012. P.H.R. only lived with Datta in Corpus Christi for six weeks, however, before the childcare Datta had arranged was no longer available. Datta sent P.H.R. back to Tennessee at the end of November 2012 to stay with her maternal grandparents while Datta continued to look for suitable daycare.

In December 2012, Rubio attempted to exercise his winter visitation, but, by that point, P.H.R. had returned to Tennessee and was staying with her grandparents. Rubio made other attempts to exercise his visitation during the course of the following months and, in February 2013, Rubio filed a petition to modify conservatorship. In his petition Rubio asked the court, inter alia, to give him the exclusive right to determine P.H.R.'s primary residence and he alleged that

> The circumstances of the child, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of rendition of the order to be modified. The conservator who has the exclusive right to designate the primary residence of the child has voluntarily relinquished the primary care and possession of the child to another person for at least six months.

Datta and Rubio presented conflicting testimony during the multi-day hearing on the petition to modify conservatorship regarding the scope and extent of

3

Rubio's interactions with P.H.R. and the reasons for his limited access and visitation with P.H.R. during the first years of her life.

Essentially, Datta testified that although she wanted P.H.R. to have a relationship with her father, Rubio had very little involvement in P.H.R.'s life and routinely failed to exercise his visitation rights. Rubio did not call to speak to P.H.R. on a regular basis when the child resided in Kentucky or attempt to visit the child in Kentucky, even though she gave him the address. Datta further testified that even though she moved back to Texas so that Rubio would be closer to his daughter, Rubio only saw P.H.R. when they were living in Corpus Christi because she drove the girl to Killeen and dropped her off at Rubio's home for the weekend and then drove back to Killeen to pick her up. According to Datta, Rubio never attempted to pick up the child or otherwise initiate visitation until December 2012, when he attempted to exercise his winter visitation.  By that point, P.H.R. had returned to Tennessee and was staying with her grandparents.

Datta also testified that she had been awarded a full scholarship to Vassar College in upstate New York, and at the time of the trial, she had secured a spot for P.H.R. at the Wimpfheimer Nursery School, which is within walking distance from the college campus. Datta also testified that she will only be in classes four to five hours a day and that she has a small support system in place in New York (her sister) that she is working on expanding.

4

Rubio testified that before Datta and P.H.R. moved to Kentucky, he and Datta were able to amicably work out an informal visitation schedule. According to Rubio, who was unemployed at the time, P.H.R. stayed with him seven days out of the week and at least three weekends out of every month during this period. Datta disagreed and testified that although Rubio had committed to watching the child while she was at work and school, he changed his mind and, as a result, P.H.R. stayed with Rubio two weekends a month and for a few hours one day a week, at most. According to Datta, Rubio has been unemployed for long stretches of time during P.H.R.'s life, and when he does work, he has found temporary work assignments that require him to leave Texas.

Rubio further testified that he tried to exercise his visitation rights beginning when P.H.R. was living in Kentucky, but Datta prevented from doing so. According to Rubio, Datta regularly failed to provide him with P.H.R.'s new address each time the child moved, and she threatened to prevent him from having access to his daughter via Skype and told him that she did not care if he spoke to P.H.R. or had a relationship with the child. Rubio further testified that he was denied his 2012 summer visitation, 2012 Christmas visitation, and monthly visitation in January, February, and March 2013. Datta testified that Rubio was not denied his 2012 summer visitation, but rather, he was working in Alaska during that time and was unable to exercise his right to visitation.

5

After the April 17, 2013 hearing on the motion to modify, the trial court entered an interim order giving Rubio visitation with P.H.R. for one week per month until further order of the court or agreement of the parties. During the two and a half month period between April 17, 2013 and July 5, 2013, Datta only had P.H.R. for a total of three weeks. Datta claims that she allowed Rubio to keep the child for an extended period in late April–early May so that P.H.R. would be able to participate in her father's May 2013 wedding. Rubio, however, claims that Datta asked him to keep P.H.R. for more than the agreed-to one week visit but refused to explain why. According to Rubio, Datta later informed him that she was undergoing extensive medical treatment and was unable to care for P.H.R. Datta admitted that she had undergone extensive testing and had recently been diagnosed with fibromyalgia. She testified that she was taking medication that allowed her to lead a normal life but that there was a possibility that her medical condition could prevent her from taking care of P.H.R. at some point in the future.

Rubio testified that P.H.R. was present for his May 2013 wedding. He also testified that he and his wife have a three-bedroom, two-bath house in Killeen with a two-car garage and a big backyard. They also have an extensive support system in the area, including Rubio's parents who live five minutes away, his wife's parents, and numerous aunts, uncles, cousins, and other family members. According to Rubio, P.H.R. has developed a tight bond with him and her extended

family during the time she has lived with him in Killeen. Rubio testified that P.H.R. was going to start kindergarten in the fall and that he believed that it was in the child's best interest to reside with him in Killeen because he had a "more stable living environment and [was] more mature to handle the job of being the custodial parent" than Datta. At the time of the final hearing on the petition on July 5, 2013, P.H.R. was staying with Rubio for summer visitation.

On July 17, 2013, the trial court entered a memorandum order modifying the June 2009 order to, inter alia, appoint Datta and Rubio as joint managing conservators with Rubio having the right to designate the primary residence of the child with geographic restriction to Bell County. These modifications were finalized on September 9, 2013, when the trial court rendered a final order modifying the June 2009 order. Datta subsequently requested findings of fact and conclusions of law, which the trial court later entered. Neither Datta nor Rubio requested additional findings of fact or conclusions of law.

## Discussion

Datta contends that the trial court abused its discretion in granting Rubio's motion to modify conservatorship because the trial court did not expressly find the existence of a condition supporting modification (i.e., that Datta "voluntarily relinquished the primary care and possession of [P.H.R.] to another person for at least six months" or that there was a "material and substantial change" in the

7

circumstances of the parties that warranted granting Rubio the right to designate P.H.R.'s primary residence).[3] Datta further contends that the trial court abused its discretion in granting the motion because there is insufficient evidence that modification is in P.H.R.'s best interest.

## A. Standard of Review

We give wide latitude to a trial court's decision on custody, control, possession, and visitation issues. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *see also Mauldin v. Clements*, 428 S.W.3d 247, 268 (Tex. App.—Houston [1st Dist.] 2014, no pet.). As such, we review conservatorship determinations for an abuse of discretion, and may reverse a trial court's order only if we determine, from reviewing the record as a whole, that the trial court acted arbitrarily and unreasonably, without reference to any guiding rules or principles. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *Patterson v. Brist*, 236 S.W.3d 238, 239–40 (Tex. App.—Houston [1st Dist.] 2006, pet. dism'd). We view the evidence in the light most favorable to the trial court's decision and indulge every legal presumption in favor of its judgment. *Mauldin*, 428 S.W.3d at 268.

"Under this standard, a challenge to the legal or factual sufficiency of the evidence is not an independent ground of error but may be a relevant consideration

---

[3]     *See* TEX. FAM. CODE ANN. § 156.101(a)(1)(a), (3) (West 2014) (authorizing trial court to modify conservatorship when modification was in best interest of child and at least one of three conditions is met).

8

in assessing whether the trial court abused its discretion." *In re R.T.K.*, 324 S.W.3d 896, 899–900 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). A trial court does not abuse its discretion if some evidence supports its decision. *Whitworth v. Whitworth*, 222 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

When conducting a legal sufficiency review in conservatorship cases, an appellate court reviews all the evidence in a light favorable to the finding, crediting favorable evidence if a reasonable fact-finder could do so and disregarding contrary evidence unless a reasonable fact finder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The appellate court will sustain a legal-sufficiency or "no-evidence" challenge if (1) the record shows a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. Thus, the court will sustain a legal sufficiency challenge only when the evidence is "so weak as to do no more than create a mere surmise or suspicion." *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006).

To determine whether the evidence is factually sufficient to support the trial court's order modifying conservatorship, we must consider, weigh, and examine all of the evidence that supports or contradicts the fact-finder's determination. *See*

9

*Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We may set aside a verdict only if the evidence supporting it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). When conducting a factual sufficiency review, we must not merely substitute our judgment for that of the fact-finder. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The fact-finder is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *Id.*

## B. Applicable Law

A trial court may modify conservatorship of a child if the petitioner proves by a preponderance of the evidence that the modification is in the child's best interest and "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since . . . the date of the rendition of the order" or the "conservator who has the exclusive right to establish the primary residence of the child has voluntarily relinquished the primary care and possession of the child to another person for at least six months." TEX. FAM. CODE ANN. § 156.101(a)(1)(a), (3) (West 2014).[4]

---

[4] Section 156.101(a)(2) also allows a trial court to modify conservatorship if the child is twelve years of age or older and has expressed a custody preference to the court and the modification is in the child's best interest. *See* TEX. FAM. CODE ANN. § 156.101(a)(2). That condition, however, is inapplicable in this case

In order to prove that a material and substantial change has occurred, Rubio, as petitioner, must demonstrate what conditions existed at the time of the entry of the prior order and what material conditions have changed in the intervening period. *In re S.N.Z.*, 421 S.W.3d 899, 909 (Tex. App.—Dallas 2014, pet. denied); *cf. T.A.B. v. W.L.B.*, 598 S.W.2d 936, 939 (Tex. Civ. App.—El Paso 1980, writ ref'd n.r.e.) (noting any method of proof that demonstrates a material and substantial change of circumstances satisfies statutory requirement). Material changes may include (1) remarriage by a party, (2) poisoning of the child's mind by a party, (3) change in the home surroundings, (4) mistreatment of the child by a parent or step-parent, and (5) a parent's becoming an improper person to exercise custody. *In re S.N.Z.*, 421 S.W.3d at 909; *In re A.L.E.*, 279 S.W.3d 424, 428–29 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see also In re C.Q.T.M.*, 25 S.W.3d 730, 735 (Tex. App.—Waco 2000, pet. denied) (stating that evidence of parent's subsequent marriage to another can constitute relevant, material change of circumstances after rendition of order sought to be modified). In addition, "a course of conduct pursued by a managing conservator that hampers a child's opportunity to favorably associate with the other parent may suffice as grounds for redesignating managing conservators." *In re S.N.Z.*, 421 S.W.3d at 909–10 (quoting *Arredondo v. Betancourt*, 383 S.W.3d 730, 735 (Tex. App.—Houston

because P.H.R. was only five years old when the order modifying conservatorship was signed.

11

[14th Dist.] 2012, no pet.)). In deciding whether circumstances have materially and substantially changed, the trial judge is not confined to rigid or definite guidelines. *In re S.N.Z.*, 421 S.W.3d at 908; *In re A.L.E.*, 279 S.W.3d at 428. Rather, the determination depends on the facts of the case and must be made according to the circumstances as they arise. *In re S.N.Z.*, 421 S.W.3d at 910; *In re A.L.E.*, 279 S.W.3d at 428.

A conservator's move to a new location is not itself a material change in circumstances, but it may combine with other factors to establish a material change. *Scroggins v. Scroggins*, 753 S.W.2d 830, 832 (Tex. App.—Houston [1st Dist.] 1988, no pet.). Relevant factors include, but are not limited to, the distance of a move, the nature and quality of the children's contacts with the noncustodial parent, and the proximity, availability, and safety of travel arrangements. *Bates v. Tesar*, 81 S.W.3d 411, 430 (Tex. App.—El Paso 2002, no pet.). Stability for the child is also an important consideration. *Child v. Leverton*, 210 S.W.3d 694, 698 (Tex. App.—Eastland 2006, no pet.). Evidence concerning stability might serve as evidence not only of a material and substantial change in circumstances but also as evidence of the next part of the inquiry—the best interest of the child. *Id.*

In determining the best interest of a child, a court may consider, among other things, the desires of the child; the child's current and future emotional and physical needs; any emotional or physical danger to the child; the parental abilities

of the individual seeking custody and her plans for the child; the stability of the home; acts or omissions by a parent tending to show the existing relationship is not a proper one; and any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (listing factors used for determining best interest of child). The focus of the analysis is on the best interest of the child, not the best interest of the parent. TEX. FAM. CODE ANN. § 156.101(a) (West 2014); *cf. id.* § 153.002 (West 2014). Proof of best interest is not limited to these factors, nor do all factors always apply in every case. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

## C.     Lack of Express Fact Findings Regarding Prerequisites to Modification

Datta argues on appeal that the trial court did not expressly find that she voluntarily relinquished P.H.R. for more than six months or that there was a material and substantial change in circumstances since the June 2009 order was entered and, therefore, the trial court's findings of facts were legally insufficient to justify the granting of a modification, and the trial court abused its discretion by doing so. *See Morales v. Rice*, 388 S.W.3d 376, 382 (Tex. App.—El Paso 2012, no pet.) (holding that trial court abuses its discretion when its controlling findings of fact do not support correct legal theory sufficient to support judgment).

When a court makes fact findings but inadvertently omits an essential element of a ground of recovery or defense, the presumption of validity will supply

by implication any omitted unrequested element that is supported by evidence. *See* TEX. R. CIV. P. 299.[5] To prevent a missing element from being deemed on appeal, an appellant may request additional findings on omitted elements. *See* TEX. R. CIV. P. 298 (authorizing any party to file request for specified additional or amended findings or conclusions).

Here, the record establishes that Datta requested findings of fact and conclusions of law after the trial court modified conservatorship. The trial court obliged and expressly found one essential element of modification (i.e., that modification is in the child's best interest) but did not make any findings with regard to the other prerequisites Rubio pleaded in his petition. *See* TEX. FAM. CODE § 156.101(a)(1)(A), (3) (authorizing trial court to modify conservatorship if modification is in child's best interest and there has been material and substantial change in circumstances since rendition of order, or conservator with exclusive right to establish primary residence of child has voluntarily relinquished primary

---

[5] Texas Rule of Civil Procedure 299 provides that:

> When findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact; *but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment.* Refusal of the court to make a finding requested shall be reviewable on appeal.

TEX. R. CIV. P. 299 (emphasis added).

care and possession of child to another for at least six months). It is undisputed that Datta did not request additional findings on these omitted prerequisites to modification.

There is testimony in the record from both Datta and Rubio that Rubio remarried in May 2013. *See In re S.N.Z.*, 421 S.W.3d at 909 (stating that parent's subsequent marriage to another can constitute relevant, material change of circumstances after rendition of order sought to be modified); *see also In re C.Q.T.M.*, 25 S.W.3d at 735 (same). There is also some evidence in the record that Datta moved P.H.R. out of state four months after the June 2009 order establishing conservatorship was signed and did not provide him with the child's address, and that although she and the child moved back to Texas in 2011, Datta sent the child to live with her maternal grandparents in Tennessee shortly thereafter, and did not inform Rubio of the child's new address.

There is also some evidence that Datta repeatedly denied Rubio's court-ordered visitation and made it unreasonably difficult for him to have a healthy relationship with P.H.R. While they were discussing visitation and access issues via Skype, Datta wrote to Rubio that she did not care whether he spoke to P.H.R. and stated, "yes I'm keeping you from [yo]ur child." Thus, although disputed, there is some evidence that Datta engaged in a course of conduct that hampered P.H.R.'s opportunities to favorably associate with her father. *In re*

15

*S.N.Z.*, 421 S.W.3d at 909–10 (noting that "a course of conduct pursued by a managing conservator that hampers a child's opportunity to favorably associate with the other parent may suffice as grounds for redesignating managing conservators").

Because the trial court expressly found one of the prerequisites for modification and there is some evidence in the record to support the omitted unrequested element of a material and substantial change in circumstances, we presume that the trial court made this finding. *See* TEX. R. CIV. P. 299 (stating that "when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment").[6] Datta does not challenge the sufficiency of the evidence supporting this implied finding.

Having determined that there is some evidence of a material and substantial change in circumstances, we need not address Datta's arguments with regard to the alternative condition of voluntary relinquishment.

---

[6] We note that the case Datta relies on for the proposition that the omitted findings should not be implied under Rule of Civil Procedure 299 is factually distinguishable because the trial court in that case failed to include *any elements* of the ground of recovery or defense of partition, whereas here, the trial court expressly found one element required for modification. *See Nelson v. Nelson*, 193 S.W.3d 624, 630 (Tex. App.—Eastland 2006, no pet.) (holding that because findings of fact were requested, court could not imply that trial court considered partitioning land); *see generally* TEX. R. CIV. P. 299 (stating that "judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact").

16

**D.     Best Interest of the Child**

Datta also argues that the trial court abused its discretion when it modified conservatorship because there is insufficient evidence supporting the trial court's finding that modification was in P.H.R.'s best interest.[7]

Here, there is conflicting evidence in the record regarding whether modification is in P.H.R.'s best interest. Datta's testimony paints Rubio as an absentee father who has routinely failed to exercise his visitation rights or contact his daughter during the first four years of her life, and never spent more than forty-eight consecutive hours with P.H.R. until she was almost five years old. According to Datta, the only reason P.H.R. had any visitation with Rubio prior to November 2012 was because she drove the child back and forth to Killeen. Datta argues that Rubio has not had stable employment for several years and that the temporary work assignments he has found have required him to leave Texas for extended periods of time. Datta argues that such working arrangements would leave P.H.R. without her father for long stretches of time. Datta also points out that she has been awarded a full scholarship to Vassar College, has a flexible class schedule that will allow her ample time with P.H.R., and she has secured a spot for P.H.R. at a nearby school, located within walking distance of the college campus.

---

[7]     Datta does not explain in her brief whether she contends that the evidence is legally insufficient, factually insufficient, or both. In the interest of justice, we will analyze the evidence for both legal and factual sufficiency.

17

Rubio testified that Datta, who relocated herself and the child to three different states in a little over four years and sent P.H.R. to live with her maternal grandparents in a fourth state for extended periods during this same time frame, had provided an unstable home life for the child. According to Rubio, he wanted to exercise his visitation with P.H.R. but Datta prevented him from doing so, and routinely failed to provide him with updated address information each time she moved P.H.R. He also testified that he had a stable home for P.H.R. in Killeen, where she would be surrounded by an extensive, extended family that she had already bonded with, including her maternal grandparents who lived only five minutes away.

Reviewing the evidence in the light favorable to the finding, crediting favorable evidence if a reasonable fact-finder could do so and disregarding contrary evidence unless a reasonable fact-finder could not, we conclude that there is more than a scintilla of evidence supporting the trial court's finding that modification of conservatorship in this case was in P.H.R.'s best interest. *See City of Keller*, 168 S.W.3d at 810. Although there is conflicting evidence in the record regarding whether modification is in P.H.R.'s best interest, it was within the trial court's province as fact-finder to judge the credibility of the witnesses and the weight to be given to their testimony and we cannot substitute our judgment for the trial court's. *See Golden Eagle Archery, Inc.*, 116 S.W.3d at 761. After

considering, weighing, and examining all of this conflicting evidence, we cannot say that the trial court's finding that modification of conservatorship is in P.H.R.'s best interest is so contrary to the overwhelming weight of the evidence as to be clearly wrong or manifestly unjust. *See Plas–Tex, Inc.*, 772 S.W.2d at 445; *Cain*, 709 S.W.2d at 176. Accordingly, we conclude that the trial court's finding that P.H.R.'s best interest was served by appointing Rubio as her managing conservator with the right to designate her primary residence is supported by legally and factually sufficient evidence. As such, the trial court did not abuse its discretion by modifying conservatorship.

We overrule Datta's appellate issues.

## Conclusion

We affirm the trial court's final order modifying conservatorship.


Jim Sharp
Justice

Panel consists of Justices Jennings, Sharp, and Massengale.