In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00555-CV
_____

IN THE INTEREST OF A.E.D.

On Appeal from the 279th District Court
Jefferson County, Texas
Trial Cause No. F-169,638-A

**MEMORANDUM OPINION**

In 1998, A.S., A.E.D.'s mother, filed a petition to establish that K.D. is the biological father of A.E.D. The parties signed an agreed decree of paternity, which adjudicated K.D. as a parent of A.E.D., appointed A.S. and K.D. as joint managing conservators, gave A.S. the exclusive right to establish A.E.D.'s primary residence, and ordered K.D. to pay child support. In 2011, the Texas Attorney General filed a notice of change of status and motion for further orders, seeking modification of the 1998 order. In September 2013, the trial court modified the order and granted K.D. the exclusive right to designate A.E.D.'s primary residence, and ordered A.S. to pay child support. In three appellate issues, A.S. challenges the trial court's

1

jurisdiction to modify the order, failure to timely prepare and file findings of fact and conclusions of law, and modification of A.E.D.'s conservatorship. We affirm the trial court's order.

## Jurisdiction

In issue one, A.S. argues that the trial court had no jurisdiction to modify the 1998 order. First, A.S. contends that the Attorney General lacked standing to seek modification. We disagree. The State of Texas is a governmental entity with independent standing to bring a suit affecting the parent-child relationship. *See* Tex. Fam. Code Ann. § 102.003(a)(5) (West 2014); *see also Attorney Gen. of Tex. v. Lavan*, 833 S.W.2d 952, 955 (Tex. 1992). Because a governmental entity has standing under section 102.003(a)(5), the entity may also file a suit for modification. *See* Tex. Fam. Code Ann. § 156.002(b) (West 2014).

Second, A.S. maintains that K.D. neither intervened in the suit nor filed pleadings requesting relief, but was allowed to step into the Attorney General's shoes. The record indicates that the Attorney General requested service on K.D., over whom the trial court maintained continuing jurisdiction, and asked the trial court to modify the 1998 order to include appropriate provisions for A.E.D.'s conservatorship. K.D. executed an affidavit of possession in which he stated that A.E.D. had resided with him since May 2009.

2

In her answer and motion to dismiss, A.S. challenged the Attorney's General's standing, but did not challenge K.D.'s right to relief. When K.D. subsequently appeared before the trial court, A.S.'s counsel mentioned that the Attorney General initiated the suit and stated, "I don't know if there's any other pleading on file to support what we're doing[,]" but did not object when the trial court allowed K.D. to step in as the petitioner. Both A.S. and K.D. presented evidence and arguments regarding conservatorship. Under these circumstances, we conclude that the issue of A.E.D.'s conservatorship was tried by consent.[1] *See* Tex. R. Civ. P. 67 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."); *see also Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied) (An "unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint."). We overrule issue one.

---

[1]A.S. filed a motion for new trial, in which she challenged K.D.'s right to relief. The trial court denied the motion, and A.S. does not challenge the denial of her motion for new trial on appeal.

Findings of Fact and Conclusions of Law

In issue two, A.S. complains that the trial court filed untimely findings of fact and conclusions of law that required her to guess at the trial court's reasons for its ruling. The trial court heard the case on June 3, 2013. On July 10, A.S. requested findings of fact and conclusions of law. On September 11, the trial court signed its order modifying the parent-child relationship. On October 10, A.S. again requested findings of fact and conclusions of law. On December 10, the trial court signed findings of fact and conclusions of law.

A party must request findings of fact and conclusions of law within twenty days after judgment is signed, and the clerk of the court shall immediately bring the request to the trial court's attention. Tex. R. Civ. P. 296. The trial court must file its findings and conclusions within twenty days after a timely request is filed. Tex. R. Civ. P. 297. If the trial court fails to do so, the requesting party must, within thirty days after filing the original request, file a notice of past due findings of fact and conclusions of law. *Id*. The notice must state the date on which the original request was filed and the date the findings and conclusions were due. *Id*. Once the notice is filed, the time for the trial court to file its findings of fact and conclusions of law is extended to forty days from the date of the original request. *Id*. A party may request specified additional or amended findings or conclusions

within ten days after the trial court files its findings and conclusions. Tex. R. Civ. P. 298.

Because A.S.'s first request was prematurely filed, the request was deemed filed on September 11, 2013, the date the judgment was signed. *See* Tex. R. Civ. P. 296; *see also* Tex. R. Civ. P. 306c; *Echols v. Echols*, 900 S.W.2d 160, 161 (Tex. App.—Beaumont 1995, writ denied). On October 10, after the deadline for filing findings and conclusions had passed, A.S. provided a second request. However, this request is not titled as a notice of past due findings and neither stated the date on which the original request was filed, nor the date the findings and conclusions were due, as required by Rule 297. *See* Tex. R. Civ. P. 297. Nor does the record indicate that A.S. filed a motion requesting additional findings or conclusions. Accordingly, A.S. has failed to preserve issue two for appellate review. *See Baker v. Peterson*, No. 10-02-00113-CV, 2004 Tex. App. LEXIS 3245, at *3 (Tex. App.—Waco Apr. 7, 2004, no pet.) (mem. op.) (Failure to provide a notice of past due findings and conclusions that includes the recitations required by Rule 297 results in waiver on appeal.). Even if the issue had been preserved, we cannot say that A.S. has been prevented from presenting her case on appeal. In light of the complete reporter's and clerk's records, A.S. had the opportunity to fully brief, and we are able to fully review, whether the trial court's judgment is supported by the

5

evidence.[2] *See In the Interest of C.A.Y.,* No. 04-05-00302-CV, 2006 Tex. App. LEXIS 802, at \*\*13-14 (Tex. App.—San Antonio Feb. 1, 2006, pet. denied) (mem. op.); *see also In the Interest of J.I.T.P.*, 99 S.W.3d 841, 848-49 (Tex. App.— Houston [14th Dist.] 2003, no pet.). We overrule issue two.

## Modification

In issue three, A.S. challenges the trial court's order modifying conservatorship. A trial court may modify a possession order if modification would be in the child's best interest and the circumstances have materially and substantially changed. Tex. Fam. Code Ann. § 156.101(a)(1) (West 2014). The trial court may consider the standard possession guidelines, the child's age, developmental status, circumstances and needs; the conservators' circumstances; and any other relevant factor. *Id*. § 153.256. Regarding a child's best interest, factors to consider include: (1) the child's desires; (2) emotional and physical needs of the child now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist the individuals to promote the child's best interest; (6) the individuals' plans for the child; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that

---

[2]A.S. concedes that there is a complete record before this Court.

the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see* Tex. Fam. Code. Ann. § 263.307(b) (West 2014).

We review a trial court's modification order for abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). Under an abuse of discretion standard, the legal and factual sufficiency of the evidence are not independent grounds of error but are merely factors in assessing whether the trial court abused its discretion. *Green v. Green,* No. 09-10-00364-CV, 2011 Tex. App. LEXIS 3988, at *6 (Tex. App.—Beaumont May 26, 2011, pet. denied) (mem. op.). The trial court does not abuse its discretion if its order is supported by some evidence of a substantive and probative character. *Id*. "Trial courts have wide discretion to determine a child's best interest, including issues of custody, control, possession[,] and visitation." *Davis v. Davis*, No. 01-12-00701-CV, 2014 Tex. App. LEXIS 2591, *28 (Tex. App.—Houston [1st Dist.] Mar. 6, 2014, no pet.) (mem. op.). We review the entire record to determine whether the trial court's decision was arbitrary or unreasonable. *Id*. at *29.

K.D. testified that A.E.D. began living with him in May 2009. He stepped in because A.E.D. was constantly tardy at school and was not completing his school work. According to A.E.D.'s school records, he had been tardy approximately

seventy times. K.D. testified that he has had no issues getting A.E.D. to school on time. A.E.D. explained during his interview in chambers that he has been on time during the days he stayed with A.S. A.S. testified that A.E.D. did not begin consistently living with K.D. until March 2011.

K.D. testified that A.E.D. has been classified as emotionally distressed and placed in special education. A.S. testified that she fought to get A.E.D. into those special education classes without support from anyone else. Psychiatrist Sudheer Kaza testified that he diagnosed A.E.D. with bipolar disorder and ADHD. K.D. testified that he took A.E.D. off his medication. A.S. explained that A.E.D.'s tardiness resulted from sleep inertia, a possible trait of bipolar disorder. She testified that A.E.D. needs medication to control his bipolar disorder, but K.D. has denied her access to A.E.D.'s insurance.

K.D. testified that A.E.D. does not like rules and has a hostile relationship with his stepmother. L.D., A.E.D.'s stepmother, testified that A.E.D. has struck her, stolen her telephone, cursed at her, sent hateful text messages to her, and incurred a large bill for pornography. Counselor Tanya Goldbeck stated that A.E.D. has a loving and caring relationship with K.D., but constantly fights with L.D. According to A.E.D., there are always conflicts at K.D.'s home. A.E.D.

admitted that he does not get along with L.D. A.E.D. explained that L.D. gets angry with him, but does not discipline her own children.

K.D. testified that A.E.D. has struck him, run away, stolen A.S.'s vehicle, wrecked his grandfather's vehicle, and has poor grades in school. A.S. testified that A.E.D. broke into both her home and K.D.'s home. L.D. testified that the police have been called to her home on several occasions. She also testified that A.E.D. is failing school, refuses to do his schoolwork, and skips class. According to A.S, A.E.D. had run away and might be involved with drugs. She testified that A.E.D. had threatened suicide three times while residing with K.D., but A.E.D. testified that these are empty threats. K.D. testified that A.E.D. has emotional problems, is lazy and manipulative, and will always misbehave. Goldbeck found that A.E.D. is manipulative, feels anyone who tells him what to do is bothering him, and is "skilled in escaping from responsibilities due to angers and resentments."

K.D. testified that he loves A.E.D., that raising A.E.D. is a full-time job, and that A.E.D. needs a man in his life. L.D. testified that she loves A.E.D., she wants the best for him, and he needs guidance and discipline. Assistant Principal Brandon Basinger testified that before living with K.D., A.E.D. had above average disciplinary issues, but that A.E.D. now has no more disciplinary issues than an average child of his age. Basinger believed that outside-of-school factors had

contributed to these changes. Kathy Reamy, a special education teacher specialist, testified that A.E.D.'s disciplinary issues have decreased over the past three years.

K.D. and L.D. testified that A.E.D. has stated a desire to live with both parents, but K.D. testified that A.E.D.'s preference depends on whether he is in trouble. K.D. believed that A.E.D. needs constant supervision that A.S. cannot provide. L.D. opined that A.E.D. gets away with a lot with A.S. K.D. and L.D. both believed that military school was an option for A.E.D. According to Goldbeck, there is a focus on scheduling and homework in K.D.'s home, but in A.S.'s home, A.E.D. is often excused because of "the idea of his 'severe emotional problems.'" Reamy opined that K.D. is the parent most concerned about A.E.D.'s best interest.

A.S. believed that it would be in A.E.D.'s best interest to reside with her. She testified that A.E.D.'s impulsivity is part of his disability and he needs psychiatric care and counseling. A.S. also believed that A.E.D. needs a private placement where he can receive the special education support that he needs. She testified that she and A.E.D. get along well and A.E.D. is never hostile toward her. She denied being lenient with A.E.D. and explained that she respects him, is able to control him, and does not yell at him or degrade him like K.D. does. Kaza opined that A.S. is a good mother and took good care of A.E.D. E.R., A.E.D.'s

10

maternal grandfather, testified that A.S. had always placed A.E.D.'s needs first and that if she had primary custody, she would make a good-faith attempt at resolving some of A.E.D.'s issues. A.E.D. testified that he wanted to live with A.S. and was happy with A.S.

Based on the evidence presented to the trial court, since the 1998 order was entered, A.E.D. no longer resides with A.S., but has resided with K.D. for a significant period of time. Because of this change in A.E.D.'s home surroundings, the trial court could reasonably conclude that the circumstances have materially and substantially changed. *See* Tex. Fam. Code Ann. § 156.101(a)(1); *see also Arredondo v. Betancourt*, 383 S.W.3d 730, 734-35 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (Material changes in circumstances include a change in the child's home surroundings.); *Child v. Leverton*, 210 S.W.3d 694, 698 (Tex. App.—Eastland 2006, no pet.) (A trial court may consider a child's stability when determining whether a material and substantial change in home circumstances has occurred.).

The record contains differing evidence regarding which parent's home would be the best placement for A.E.D. A.E.D. said he wanted to live with A.S., but the record suggests that A.E.D.'s preference changes. Regarding K.D.'s home, the record contains evidence that: (1) while in K.D.'s custody, the police had been

11

called to K.D.'s home, A.E.D. had threatened to commit suicide, A.E.D. is failing and skipping school, and A.E.D. has a hostile relationship with L.D.; (2) there is conflict in K.D.'s home; (3) A.E.D.'s disciplinary problems decreased since living with K.D.; (4) K.D. took A.E.D. off his medication and withheld an insurance card from A.S.; (5) K.D. and L.D. love A.E.D.; and (6) A.E.D. was no longer tardy for school. Regarding A.S.'s home, the record contains evidence that: (1) while living with A.S., A.E.D. was tardy to school on numerous occasions, which A.S. attributed to sleep inertia, and had more disciplinary problems than average; (2) A.S. is a good mother, takes good care of A.E.D., worked to obtain special education classes for A.E.D., and places A.E.D. first; (3) A.S. excuses A.E.D.'s behavior because of "the idea of his 'severe emotional problems[;]'" and (4) A.S. is respectful to and gets along with A.E.D.

The record further indicates that A.E.D.'s bad behavior has occurred at both parents' homes and that A.E.D. misbehaves in response to discipline. According to the record, A.E.D. does not like rules, rebels when asked to comply with the rules, is manipulative, and is "skilled in escaping from responsibilities due to angers and resentments." K.D. and L.D. planned to consider military school for A.E.D. A.S. planned to obtain psychiatric care and counseling for A.E.D. and private placement where he could receive special education.

"A trial court may devise a possession order that is suitable for the custody situation at issue." *In the Interest of R.A.M.*, No. 09-12-00331-CV, 2013 Tex. App. LEXIS 606, at *7 (Tex. App.—Beaumont Jan. 24, 2013, pet. denied) (mem. op.). The trial court had before it evidence indicating that the home with the most structured and disciplined environment was in A.E.D.'s best interest. As sole judge of the weight and credibility of the evidence, the trial court could reasonably conclude that K.D. was the parent best suited to provide such an environment. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). Viewing the entire record, we conclude that the trial court's modified order is supported by some evidence of a substantive and probative character; thus, the trial court did not abuse its discretion by modifying the 1998 custody order. *See Davis,* 2014 Tex. App. LEXIS 2591, at *28; *see also Green,* 2011 Tex. App. LEXIS 3988, at *6. We overrule issue three and affirm the trial court's order.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on June 17, 2014
Opinion Delivered September 4, 2014

Before McKeithen, C.J., Horton and Johnson, JJ.