Russell Brent CHILD, Appellant,

v.

Hillary Brandise LEVERTON,
Appellee.

No. 11–04–00141–CV.

Court of Appeals of Texas,
Eastland.

Sept. 21, 2006.

Cynthia Rucker Allen, Whitten, Hacker, Hagin, Anderson, Allen & Self, P.C., Abilene, for appellant.

Celia D. Trimble Boone, Abilene, for appellee.

Panel consists of: WRIGHT, C.J., and McCALL, J., and STRANGE, J.

**OPINION**

JIM R. WRIGHT, Chief Justice.

This is an appeal from the trial court's order denying Russell Brent Child's motion for enforcement and granting in part Hillary Brandise Leverton's petition to modify the parent-child relationship. We affirm.

On September 18, 2002, Child and Leverton entered into a mediated settlement agreement in their divorce case. At that time as well as at the time the trial court entered the decree of divorce, Leverton and the parties' two children lived in Taylor County. In accordance with the mediated settlement agreement, the Feb-

ruary 25, 2003 divorce decree contained language restricting Leverton's right to establish the legal residence of the children, A.C. and B.C. The divorce decree provides that Leverton shall have the exclusive right:

> [T]o determine and establish the children's legal residence and domicile within Denton and Taylor Counties, Texas, through May 2003; thereafter, the right to determine and establish the children's legal residence and domicile within Denton and Tarrant Counties, Texas; provided, that determining and establishing such residence within Tarrant County shall be east of Highway 1220 and north of Highway 183.

On May 15, 2003, Leverton filed a petition to modify the geographical restrictions in the decree.[1] On November 17, 2003, Child filed a motion for enforcement. He alleged that Leverton had failed to comply with the divorce decree because she had not established the children's residence in either Denton County or Tarrant County. Child asked the trial court to hold Leverton in contempt and to require Leverton to move the children from Taylor County to either Denton or Tarrant County. On February 9, 2004, the trial court held a hearing on the motion and issued its order on March 24, 2004. The trial court found that the terms of the order which Child sought to enforce were "not specific enough" for the remedy sought. In its order, the trial court stated:

> [I]t is in the best interest of the children that the residence restriction as contained in the Final Decree of Divorce be modified to the extent that any time requirement for the return of HILLARY BRANDISE LEVERTON be re-

moved. IT IS FURTHER THEREFORE ORDERED, ADJUDGED, AND DECREED that HILLARY BRANDISE LEVERTON shall be the parent Joint Managing Conservator with the exclusive right to designate the primary residence of the children within Taylor and/or Denton and/or Tarrant Counties, Texas, provided that in determining and establishing such residence within Tarrant County, Texas, said residence shall be East of Highway 1120 and North of Highway 183.

It is from this order that Child appeals.[2]

In his first point of error, Child argues that the trial court erred in finding that the order was not specific enough to be enforced. In his second point of error, Child contends that the trial court erred in failing to enforce the provisions regarding designation of his children's residence in Denton or Tarrant Counties. In his third point of error, Child maintains that the trial court abused its discretion when it found that there had been a material and substantial change in circumstances since the date of the agreement.

■ We will first address Child's third point of error. We review a trial court's order modifying conservatorship under an abuse of discretion standard. *See Wyatt v. Wyatt*, 104 S.W.3d 337 (Tex. App.-Dallas 2003, no pet.); *see also Jenkins v. Jenkins*, 16 S.W.3d 473 (Tex.App.-El Paso 2000, no pet.). The test for abuse of discretion is whether the trial court acted in an arbitrary and unreasonable manner or whether it acted without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985). While legal and fac-

---

1. Leverton also sought to have the child support payment increased. The trial court denied Leverton's request for increased child support; that ruling has not been appealed.

2. Child has expressly waived his original request that the trial court hold Leverton in contempt.

tual sufficiency issues are not independent grounds of error in cases of this nature, they are factors which can be considered in determining whether an abuse of discretion has occurred. *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex.App.-Fort Worth 2002, pet. denied).

An appellate court makes a two-prong inquiry when it determines whether legal or factual insufficiency has resulted in an abuse of discretion: (1) whether the trial court had sufficient information upon which it might exercise its discretion and (2) whether the trial court erred when it applied that discretion. *Id.* The sufficiency review is related to the first inquiry. If it is revealed in the first inquiry that there was sufficient evidence, then we must determine whether the trial court made a reasonable decision, and that involves a conclusion that the trial court's decision was neither arbitrary nor unreasonable. *Id.*

In analyzing a legal sufficiency or no-evidence issue, an appellate court must consider the evidence in the light most favorable to the challenged finding and must indulge every reasonable inference that would support it. A reviewing court must credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. The appellate court must determine whether the evidence at trial could enable reasonable and fair-minded people to find the facts at issue. A no-evidence challenge may be sustained only when (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802 (Tex.2005).

When we consider legal sufficiency in this context, if there is any probative evidence which supports the trial court's finding, then there is no abuse of discretion. *Bates v. Tesar*, 81 S.W.3d 411, 425 (Tex. App.-El Paso 2002, no pet.). This remains true even though we might have found the issue otherwise; we cannot substitute our judgment for that of the trial court. *Id.*

Child is also complaining about the factual sufficiency of a finding upon which he did not have the burden of proof. An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in making this determination. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.1998).

Because the divorce decree in this case was based upon a mediated settlement agreement, Leverton was required to establish that any material change in circumstances occurred subsequent to the mediation. TEX. FAM.CODE ANN. § 156.101 (Vernon Supp.2006). The Family Code requires proof of a material and substantial change of circumstances because of res judicata considerations and the State's desire to prevent constant relitigation with respect to children. *See Watts v. Watts*, 563 S.W.2d 314, 316 (Tex.Civ.App.-Dallas 1978, writ ref'd n.r.e.). Leverton had the burden of proof. This required her to produce evidence comparing the circumstances that existed at the time of the parties' mediation agreement with the circumstances at the time of the modification hearing. *See id.* at 315; *see also London*

*v. London,* 192 S.W.3d 6, 15 (Tex.App.-Houston [14th Dist.] 2005, pet. denied).

■ The best interest of the children is always the trial court's primary consideration. *In re T.D.C.,* 91 S.W.3d at 873. But, when a party asks the trial court to modify the residency restrictions contained in the divorce decree, the existing residency provisions are res judicata of the children's best interest unless and until it is established that there has been a material and substantial change in circumstance. *In re M.N.G.,* 113 S.W.3d 27, 33–34 (Tex. App.-Fort Worth 2003, no pet.).

Both of the children attend school at St. John's Episcopal Church in Abilene. A.C. attended there at the time of the mediated settlement; B.C. began attending there later. Jeannie Stark, the "principal" of the school testified. Stark testified that A.C. initially was a difficult child at St. John's. He had a hard time being structured and having a routine. He would also "act out" from time to time. Stark was asked whether A.C. had changed since he first came to St. John's. Her testimony was that he had become a happier child, was acting out less than before, was very focused, loved to learn, and had "grown up." Stark shared her concern that A.C. could not handle the change. She believes that stability is important.

Dr. Stephen M. Osborn is a clinical psychologist with some twenty-seven years of practice. He was counseling with Leverton and the two children at the time of the mediated settlement agreement and continued to see them at the time of the hearing on the motion to modify. Dr. Osborn originally diagnosed A.C. with an "anxiety disorder and Attention Deficit Disorder." Since Dr. Osborn began seeing A.C., he had seen improvement in A.C. as a result of schooling, structure, counseling, and medication. Dr. Osborn testified that A.C. needed stability, structure, and security. Dr. Osborn also testified that moving A.C. would involve "negative adjustments" by changing his routine and structure; it would be "advisable" for A.C. to remain in Abilene. Principal Stark agreed with Dr. Osborn's opinion that A.C. needed stability.

Leverton testified that if she moved it would be more difficult for her to obtain a music education degree because she would lose hours and would be under a new degree plan due to changes made by universities available to her in Denton County or Tarrant County, that she would not be able to earn as much money and have as much flexibility as she could working for her father in Abilene, and that moving would be hard for A.C.

Child testified that it would be in the children's best interest to move back to either Denton or Tarrant Counties to be able to have more contact with him. Child stated that his extended family could help with the children's after-school care and that the children could participate in more activities. Child disagreed with the other witnesses, and he does not feel that moving from Taylor County would be detrimental to A.C.

Child points out that at the time of the mediated settlement agreement Leverton and the children lived in Taylor County, Leverton was enrolled in McMurry University, Leverton worked for her father at a certain salary, A.C. was enrolled in St. John's, Leverton's father was paying the tuition at St. John's, Child worked for Goodman Homes, the children were in counseling with Dr. Osborn, Leverton's parents and siblings lived in Taylor County, and Child's parents and siblings lived close to him in the Metroplex. He argues that none of that changed between the date of the agreement and the hearing on the motion to modify except that he moved

out of the marital home because the home was sold pursuant to the decree, B.C. enrolled in St. John's, and Leverton learned that she would lose course credits if she changed schools. Child argues that the changes that have occurred are not material and substantial.

There are many cases in which a noncustodial parent seeks modification of orders regarding conservatorship in order to prevent a custodial parent from moving to a new location. There are also many cases in which a noncustodial parent seeks to enforce a provision in an order or decree which contains language preventing a custodial parent from moving to a new location. This case is different. Here, Child, the noncustodial parent seeks an order by which Leverton the custodial parent would be required not to refrain from moving to a new location but, rather, to move to a new location; Leverton seeks an order allowing she and the children to stay where they are.

To maintain the stability of children is one of the reasons behind the requirement that a material and substantial change in circumstance be proved before inquiry is made into the best interest of the children. The importance of stability for children is recognized as a matter of public policy in Texas. "The public policy of this state is to: provide a ... stable ... environment for the child." Tex. Fam.Code Ann. § 153.001(a)(2) (Vernon 2002).

If, then, stability is an important consideration, in cases like the one before us where Leverton is not trying to move but rather wants to keep the children where they are, courts should be able to consider the current stability of the children as evidence of whether there has been a material and substantial change in circumstance. Such evidence might very well serve as evidence not only of a material and substantial change in circumstance but, also, as evidence of the next inquiry— the best interest of the children. We cannot know the motive of the parents in taking whatever actions they have taken, but that is not our concern. Our concern in cases of this nature is for the children, including a concern for their stability.

Although Justice Burgess in *A.D.H.* disagreed with the majority and would have held that the trial court there did not abuse its discretion, he stated the generally accepted notion that, although an appellate court might have reached a different result than the trial court, it is not the job of an appellate court to reweigh the evidence and reverse to get that preferred result. *In re A.D.H.*, 979 S.W.2d 445, 452 (Tex.App.-Beaumont 1998, no pet.) (Burgess, J., dissenting opinion). A reviewing court should give great deference to the trial court's judgment. The trial court is face-to-face with the parties and the witnesses, watches their demeanor, observes their personalities, and "senses the forces and powers which motivate them." *Id.* Those principles dictate to us that we cannot substitute our judgment for that of the trial court.

We have reviewed legal and factual sufficiency considerations as factors to be considered in determining whether the trial court abused its discretion. We hold that the evidence which we have outlined above is some evidence of a material and substantial change in circumstances and is also evidence bearing upon the best interest of the children. We also hold that the evidence is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. The trial court had before it sufficient information upon which it might exercise its discretion; and, based upon the evidence and the applicable law, the trial court did not err in the application of that discretion. *See In re T.D.C.*, 91 S.W.3d at 872. After

a consideration of all of the factors relating to an abuse of discretion in cases of this nature, we hold that the trial court did not act in an arbitrary and unreasonable manner and neither did it act without reference to guiding principles. Therefore, the trial court did not abuse its discretion when it modified the provisions relating to the residency of the children. Child's third point of error is overruled.

Because the trial court modified the order regarding the residency of the children and because we are affirming the decision of the trial court, we do not reach Child's points of error one and two pertaining to the enforcement of the original order.

The judgment of the trial court is affirmed.

RICK STRANGE, Justice, dissenting.

I respectfully disagree with the majority's determination that the trial court did not abuse its discretion by finding a material and substantial change in circumstance. The record is absent any evidence that the parties' circumstances materially and substantially changed—as opposed to events normally occurring during the passage of time—subsequent to their mediation. Rather, it appears that the trial court modified the divorce decree based upon a determination that it would be in the children's best interest to remain in Abilene. Because this approach is contrary to the Texas Family Code and is also contrary to public policy favoring mediation agreements in suits affecting the parent-child relationship, I believe the trial court abused its discretion.

Our review is complicated by the hybrid analysis utilized in family law cases involving children. This requires combining an abuse of discretion review with a traditional sufficiency review and factoring in the children's best interest. Texas courts have developed several rules or guidelines to implement this hybrid analysis. For example, we must initially ascertain whether the trial court had sufficient information upon which to exercise its discretion utilizing a traditional sufficiency review. *Lindsey v. Lindsey,* 965 S.W.2d 589, 592 (Tex. App.-El Paso 1998, no pet.). Next, we determine whether the trial court erred in its application of discretion, which requires that we decide whether the trial court made a reasonable decision. *Knight v. Knight,* 131 S.W.3d 535, 539 (Tex.App.-El Paso 2004, no pet.). At first blush, these guidelines sound helpful; but, in application, they beg several questions. For example, what evidence do we consider? [1] when is that evidence sufficient? and what role does the children's best interest play?

The majority is clearly correct when it notes that the children's best interest is our primary consideration. I further agree with the majority that allowing the children to stay in Abilene would in many ways be advantageous for them. But, when a party seeks to modify a divorce decree, the children's best interest is the second question not the first. The first question is whether a material and substantial change of circumstance has occurred because the original decree is res judicata of the children's best interest. *Watts v. Watts,* 563 S.W.2d 314, 316 (Tex. Civ.App.-Dallas 1978, writ ref'd n.r.e.). Absent a material and substantial change of circumstance, revisiting the prior determination of best interest is inappropriate. *See In re M.N.G.,* 113 S.W.3d 27, 34 (Tex. App.-Fort Worth 2003, no pet.) (requiring

---

1. I recognize that, when reviewing a legal sufficiency complaint, we are to consider only the evidence and inferences tending to support the trial court's finding and disregard all contrary evidence and inferences. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001). My concern is evidence of what?

proof of a material and substantial change "serves a valid purpose of significantly limiting the trial judge's discretion and prevents the modification statute from being unconstitutionally broad"). Consequently, while it may sound counter-intuitive, the trial court had no discretion to make a best interest determination absent proof of the required change.

What evidence should we consider to determine if Leverton met her burden of proof? Trial courts have been instructed to compare the conditions existing at the time of the mediation agreement with the conditions existing at the time of the modification hearing. *Agraz v. Carnley*, 143 S.W.3d 547, 554 (Tex.App.-Dallas 2004, no pet.). Obviously, the fact that Leverton may no longer be happy with the mediation agreement is insufficient. Leverton's burden was to prove a change in circumstance. *Bates v. Tesar*, 81 S.W.3d 411, 424 (Tex.App.-El Paso 2002, no pet.). This burden is by design more stringent than simply showing that a requested modification would be in the children's best interest. *See* TEX. FAM.CODE ANN. § 156.101(1) (Vernon Supp.2006).

At trial, Leverton testified that her residency request was based upon the realization that, if she moved, it would be more difficult for her to obtain a music education degree. Leverton did not advance that issue before this court. Instead, she pointed out that she would make less money if she moved; that one of her children, A.C., has been diagnosed with ADD/ADHD; that A.C. is settled and doing well in school; and that continuity was important for her children.

I do not believe that any of these reasons is evidence of a change in circumstance. Leverton may not have appreciated the difficulty she would encounter completing her degree when she signed the mediation agreement, but that difficulty was not due to anything that happened subsequent to the mediation. Similarly, the fact that she would make less money if she worked for another employer other than her father is a factor that was present, but perhaps not fully appreciated, when the mediation agreement was signed.

The only other change of circumstance identified by Leverton is the fact that A.C. is receiving needed stability for his ADD/ADHD condition at his present school. The majority bases its holding on this factor, concluding that the children's current stability is a material change of circumstance. I respectfully disagree because A.C.'s condition had already been diagnosed and was being treated when the parties signed their mediation agreement. The facts that his condition had improved and that allowing him to remain at his present school would in some ways be beneficial are not a change of circumstance. A.C.'s improvement is presumably exactly what the parties anticipated would occur during the upcoming school year when they signed the mediation agreement. The difficulty the move would cause and its impact on his progression were also factors the parties surely considered. No evidence was offered that anything happened subsequent to mediation which materially altered these factors beyond the changes one would expect to occur during the normal passage of time.

Structure and stability are important for all children. Merely because these factors are more critical for A.C. due to his ADD/ADHD is not a change in circumstance. Moving injects uncertainty into children's lives and is always difficult as they adjust to a new home, neighborhood, school, and

church.[2] The irony is that Leverton helped create the problem when she decided not to honor the mediation agreement because the longer the children stay in Abilene the more difficult any move will be. Leverton moved to Abilene with the children when the parties separated. At mediation, she agreed to return to Denton or Tarrant County at the end of the current school year. Leverton knew when she made this promise that in a few months she and her children would have to move and make the necessary adjustments. The fact that the difficulties inherent with this promise must now be faced is not a change in circumstance.

We have no way of knowing what transpired during the mediation session and, thus, do not know what Child may have conceded to Leverton in exchange for her agreement to return with the children. But, it is reasonable to believe that this concession did not occur in a vacuum. When the legislature adopted the Texas Alternative Dispute Resolution Act, it became public policy to "encourage the peaceable resolution of disputes, *with special consideration given to disputes involving the parent-child relationship, including the mediation of issues involving conservatorship, possession, and support of children,* and the early settlement of pending litigation through voluntary settlement procedures." TEX. CIV. PRAC. & REM. CODE ANN. § 154.002 (Vernon 2005) (emphasis added). Allowing Leverton to modify the decree without requiring proof of a material and substantial change in circumstance is counter to this policy, and I

worry that our decision sends the wrong message.

Moreover, the trial court which granted the parties their divorce knew that Leverton and her children would necessarily have to move at the end of the school year.[3] Despite this, the original trial court determined that the decree was in the children's best interest. Neither party appealed that ruling. I worry also that we are sending the wrong message on the role of res judicata when family law cases are transferred from one county to another.

The Austin Court of Appeals recently held that a trial court abused its discretion by modifying a divorce decree based on circumstances that were clearly contemplated by the parties at the time of the rendition of their original divorce decree. *Zeifman v. Michels,* No. 03–05–00533–CV, 2006 WL 2190525, 212 S.W.3d 582 (Tex. App.-Austin Aug. 4, 2006, no pet.). In that case, the parties agreed at mediation that their daughter would attend a specific public school. Subsequently, the child's mother successfully applied for her daughter's admission to a private school. The mother sought to modify the decree to allow her daughter to attend the private school. The trial court granted her petition.

Several similarities exist between that case and our own. Principal among them is the fact that in neither case was there truly a change of circumstance. Rather, in Zeifman, the trial court presumably determined that it would be better for the child to attend the private school because of the strength of its academics. In our case, the trial court apparently determined that it

---

2. *See* Edwin J. (Ted) Terry, Jr., James A. Vaught, Karl E. Hayes, and Jennifer L. Tull, *Dealing with Mobile Parents: Domicile Restrictions and Relocation,* STATE BAR OF TEXAS ADVANCED FAMILY LAW COURSE ch. 69 at 27 (2001).

3. The parties' divorce proceedings were filed in Denton County and their divorce was granted in Denton County. When Leverton filed her petition to modify, she also filed a motion to transfer venue to Taylor County. That motion was granted, and the case was transferred.

would be better for the children to stay at their school in Abilene. The Austin Court noted Texas public policy favoring mediation in divorce cases and discouraging relitigation with respect to children. Id. at 588, 2006 WL 2190525, at *11–12. The court found that the latter was accomplished by requiring proof of a material and substantial change. Id. Because the child's education was a circumstance given considerable attention by the parents when they signed their mediation agreement and because there was no change in circumstance beyond changes incident to the passage of time, the court held it was improper to modify the decree.

In our case, the children's residence was similarly given considerable attention by the parties, and their agreement was approved by the court. I respectfully submit that we should follow the example set by our sister court. A comparison of the circumstances existing at the time of the mediation agreement with the circumstances existing at the time of the modification reveals no material or substantial change. Because there is no evidence of the required change, I would find that the trial court abused its discretion by modifying the divorce decree.