Opinion filed September 13, 2007

















 
 
  
 
 







 
 
  
 
 




Opinion filed September 13, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00415-CV 

                                                     __________

 

                              IN
THE INTEREST OF B.A.S., A CHILD

 

 



 

                                        On
Appeal from the County Court at Law

 

                                                          Brown County, Texas

 

                                               Trial
Court Cause No. CV0409358

 



 

                                 M
E M O R A N D U M   O P I N I O N

 

This appeal arises from an order that modifies a
previous child custody order.  Martha
Allene Hicks Sullivan, appellant, and Joshua Michael Sullivan, appellee, are
the parents of a minor child (B.A.S.). 
They divorced on February 9, 2004, when B.A.S. was approximately
nineteen months old.  The final decree of
divorce named both parents as joint managing conservators of B.A.S. with
appellant having the exclusive right to designate the child=s primary residence. 








Appellee filed a petition seeking to modify the
parent/child relationship by asking the court to appoint him as the parent with
the right to determine B.A.S.=s
primary residence.  After a series of
hearings, the trial court granted appellee=s
requested modification.  Appellant raises
a single issue on appeal challenging the sufficiency of the evidence supporting
the trial court=s
decision to modify the child=s
primary residence.  We affirm.

                                                              Standard
of Review

We review a trial court=s
decision to modify conservatorship under an abuse of discretion standard. Gillespie
v. Gillespie, 644 S.W.2d 449, 451 (Tex.
1982); Child v. Leverton, 210 S.W.3d 694, 695 (Tex. App.CEastland
2006, no pet.).  A trial court abuses its
discretion if it acts arbitrarily and unreasonably or without regard to guiding
rules or principles.  Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985). The trial court is vested with
wide discretion in determining custody issues.  See Pe_a
v. Pe_a,
8 S.W.3d 639, 639 (Tex.
1999); Gillespie, 644 S.W.2d at 451. 
The best interest of the child is always the trial court=s primary consideration.  Child, 210 S.W.3d at 697.

Under an abuse of discretion standard, legal and
factual sufficiency challenges to the evidence are not independent grounds of
error but are relevant factors in assessing whether the trial court abused its
discretion.  Child, 210 S.W.3d at
696.   Because we apply an abuse‑of‑discretion
standard to a modification suit, the traditional sufficiency standards of
review overlap the abuse of discretion standard, and appellate courts apply a
hybrid analysis.  Echols v. Olivarez,
85 S.W.3d 475, 476 (Tex. App.CAustin 2002, no pet.); In re D.S.,
76 S.W.3d 512, 516 (Tex.
App.CHouston
[14th Dist.] 2002, no pet.).  Once it has
been determined that the abuse‑of‑discretion standard applies, an
appellate court engages in a two‑pronged inquiry: (1) whether the trial
court had sufficient information on which to exercise its discretion and (2)
whether the trial court erred in its application of discretion.  Child, 210 S.W.3d at 696.  The traditional sufficiency review comes into
play with regard to the first question; however, the inquiry does not end
there. Id.  The appellate court then proceeds to
determine whether, based on the evidence, the trial court made a reasonable
decision, that is, that the court=s
decision was neither arbitrary nor unreasonable. Id.








In analyzing the legal sufficiency of the
evidence, we must consider the evidence in the light most favorable to the
verdict and indulge every reasonable inference that supports it.  City of Keller
v. Wilson, 168 S.W.3d 802, 821-22 (Tex. 2005).  The evidence is legally sufficient if it
would enable reasonable and fair‑minded people to reach the verdict under
review. Id.
at 827‑28. We may sustain a no‑evidence challenge only when (1) the
record discloses a complete absence of evidence of  a vital fact, (2) the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to
prove a vital fact, (3) the only evidence offered to prove a vital fact is no
more than a mere scintilla, or (4) the evidence conclusively establishes the opposite
of a vital fact. Id.
at 810. In determining the factual sufficiency of the evidence, we consider and
weigh all of the evidence and set aside the verdict only if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In
re King=s Estate,
244 S.W.2d 660, 661 (Tex.
1951). 

                                                              Factual
Background

Acting as the fact-finder, the trial court
received testimony pertaining to the custody of the child over the course of
several hearings.   The first hearing
occurred on September 24, 2004.  This
hearing involved requests by both parents for protective orders regarding their
possession and visitation of the child. 
The mutual requests for protective orders arose from a number of
disputes between the parents concerning appellee=s
first period of extended summer visitation occurring after the couple
divorced.  Appellant alleged that
appellee attempted to run her vehicle off of the road when she attempted to
pick up the child at the end of the visitation period.  Appellant also alleged that the child=s behavior changed dramatically after
the visit.  She testified the child
engaged in attacks of rage and used curse words.  Appellant did not permit appellee to exercise
his subsequent periods of visitation with the child as result of her concerns
about the child=s
well-being while in appellee=s
custody.

The trial court denied both parties= requests for protective orders at the
conclusion of the hearing on September 24, 2004.  In issuing this ruling, the trial court
advised the parents that it believed that both of them had engaged in conduct
that was detrimental to the child.  The
trial court kept the visitation provisions set out in the divorce decree
intact, with the exception that future exchanges of possession were to occur at
the Brownwood Family Services
 Center.








The next hearing occurred on March 24, 2005, on
appellant=s motion
to modify temporary orders.  Appellant
alleged in her motion to modify that appellee had sexually abused the
child.  She asked the trial court to
either prevent appellee from having any visitation with the child or require
that all periods of appellee=s
visitation be supervised.  She supported
her allegation of sexual abuse in large part upon an affidavit from the child=s counselor, Donna Ross.  Ross made the following statements in her
affidavit:

On February 2, 2005, during an office visit with
[the child], [the child] informed me that ASabrina
pulled on my nipple . . . Sabrina took her pants off . . . then Daddy showed me
Sabrina=s
nipple.  Then Daddy slapped me.  Then Daddy did the >shame
on.=[@]
Both daddy and Sabrina encouraged [the child] to lick and/or suck on Sabrina=s nipples, which, according to [the
child], had needles in them.  It was
reported to me that Sabrina Tylene Smithson is [the child=s] father=s
fiancee.

 

Appellant also stated in an affidavit that the child had asked
her, AMommy can
I see your nipples?@  Appellant=s
affidavit also contained the child=s
purported description of Sabrina=s
nipples as being pierced.  

Both Ross and appellant testified at the March 24,
2005, hearing.  Ross=s testimony repeated the allegations
contained in her affidavit.  She
testified that she made a report to CPS based upon her concerns about the child=s well-being while in appellee=s possession.  Appellant additionally asserted that she
found an unusual type of pacifier in the child=s
clothing when the child returned from a visit with appellee.  Appellant believed that the pacifier was of a
type used by people that take Ecstasy. 
Appellee denied the allegations made by Ross and appellant.  He testified that the pacifier was a novelty
item that he purchased for the child at a local skating rink.  Appellee=s
fiancee, Sabrina Smithson, testified that she had never had pierced nipples.

At the conclusion of the hearing on March 24,
2005, the trial court announced that it was going to name appellee as the
temporary primary conservator of the child. 
The trial court based its decision upon its review of Ross=s counseling records.  After the court announced its decision, a
disturbance involving appellant occurred. 
Appellant stated: AWell,
it=s not going to happen.  I don=t
give a s--t. It=s not
going to happen.@  When advised of the possibility of going to
jail for her outburst, appellant replied by saying, AGood,@ whereupon she exited the
courtroom.  The trial court instructed
its bailiff to take appellant into custody for contempt of court. During
subsequent questioning of appellant, she was not immediately forthcoming in
disclosing the child=s
whereabouts so that appellee could obtain custody of the child.








The final hearing in the case occurred on
September 12, 2005, on appellee=s
motion to modify the parent/child relationship. 
Appellee called Ross as his first witness at the final hearing. Ross
continued to counsel the child after the previous hearing on March 24, 2005.  She testified that the child had improved
dramatically since being placed with appellee. 
Ross stated as follows:  ASince [the previous hearing], her play
has progressed, I guess you could say, into being pretty much a normal
child.  I don=t
see a lot of the anxiety play, the worry, the nervousness in her play that I
saw before.@  Ross stated that she believed that the child
should continue to reside with appellee. 
Ross based her opinion on her observation of the child during therapy
and the child=s
relationship with appellee and appellee=s
wife, Sabrina.[1]

                                                                        Analysis

Appellant argues that the trial court did not have
sufficient evidence to initially change the child=s
custody at the hearing on the motion to modify temporary orders conducted on
March 24, 2005.  She additionally asserts
that the only additional evidence offered at the final hearing conducted on
September 12, 2005, was insufficient to overcome the previously offered
evidence of abuse.  We disagree.








The allegations made against appellee at the March
24, 2005, hearing were obviously troublesome. 
However, these allegations were primarily offered through the testimony
of appellant and Ross based upon statements purportedly made to them by a
toddler.  Appellee and his fiancee denied
these allegations at the hearing.  As the
trier of fact, the trial court was the sole judge of the witnesses= credibility and the weight to be given
their testimony.  City of Keller, 168 S.W.3d at
819-21.  The trial court stated at the
conclusion of the hearing that it based its decision to change the child=s residence upon the contents of Ross=s counseling records.  These records contained several entries that
were unfavorable to appellant.  One of
the initial entries described a situation where appellant came to Ross in a
rage.  Ross wrote in another entry that
there were discrepancies in some of the information that appellant had reported
to her.  Many of the statements
attributed to the child were actually relayed to Ross prior to therapy sessions
by appellant and the child=s
maternal grandmother.  On more than one
occasion, Ross indicated that she was concerned that adults were trying to
manipulate the child.  Virtually all of
the entries occurring during the time that the child lived with appellant noted
that the child was a very confused little girl who was trying to gain some type
of control over her life.

Appellant discounts Ross=s
testimony at the final hearing by arguing that her opinion testimony cannot
overcome the factual testimony she offered at the previous hearing.  We disagree.

Given her role as a disinterested witness trained in counseling
children, Ross=s
testimony at both hearings was obviously significant.  Her final opinion that appellee should have
primary custody of the child was not based upon supposition B it was based upon her observation of
the child=s
improvement over the intervening six-month period that the child resided with
appellee.  We conclude that the trial
court had legally and factually sufficient information upon which to exercise
its discretion in modifying the parent/child relationship.  We additionally hold that the trial court did


not abuse its discretion in determining that the best interest of
the child would be served by naming appellee as the parent with the right to
designate the child=s primary
residence.  Appellant=s sole issue is overruled.

                                                               This
Court=s Ruling
  

The judgment of the trial court is affirmed.

 

 

TERRY McCALL

JUSTICE

 

September 13, 2007

Panel
consists of: Wright, C.J.,

McCall,
J., and Strange, J.











[1]Appellee and Sarbrina married during the interim
between the two hearings.