# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00380-CV

**Michael Warren, Appellant**

**v.**

**Krystal Charlene Ulatoski, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 231,743-B, HONORABLE JACK WELDON JONES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Michael Warren appeals from the trial court's modification order giving appellee Krystal Charlene Ulatoski the right to designate the primary residence of their daughter, B.W. Because the evidence is legally insufficient to show a material and substantial change to the circumstances of B.W. or either of her parents, we reverse the trial court's order and render judgment denying Ulatoski's petition to modify.

### Applicable Law and Standard of Review

Texas' public policy is to ensure that a child has frequent and continuing contact with her parents, if her parents have shown they can act in the child's best interest; to provide the child with a safe, stable, and nonviolent environment; and to encourage parents to share in the raising of their child after separation. Tex. Fam. Code § 153.001(a). A child's best interest is the overarching concern in matters concerning conservatorship and possession. *Id*. § 153.002. As relevant here, a

trial court may modify a conservatorship order only if the change would be in the child's best interest *and* if the circumstances of the parents or the child have materially and substantially changed since the order was rendered. *Id.* § 156.101(a)(1). The party seeking modification bears the burden of establishing a material and substantial change in circumstances from the date of the prior order, and if she fails to meet that burden, the trial court must deny the petition. *Zeifman v. Michels*, 212 S.W.3d 582, 589 (Tex. App.—Austin 2006, pet. denied). Whether circumstances have materially and substantially changed is a fact-specific determination not guided by rigid or definite rules. *Id*. at 593. The following have been held to support modification: a parent's remarriage, a parent's poisoning the child's mind against the other parent, a change in home surroundings, mistreatment of the child by a parent or stepparent, a parent's behavior showing that he or she has become an improper person to exercise custody, or one parent's interference with the other parent's visitation. *Pietszak v. Fletcher*, No. 01-13-00578-CV, 2014 WL 2048280, at *3 (Tex. App.—Houston [1st Dist.] May 15, 2014, no pet.) (mem. op.). The "record must contain both historical and current evidence of" the parties' circumstances at the time the existing order was entered and at the time modification is sought; "[w]ithout both sets of data, the court has nothing to compare and cannot determine whether a change has occurred." *Zeifman*, 212 S.W.3d at 594 n.1.

We will not disturb a trial court's decision on a motion to modify unless the complaining party shows a clear abuse of discretion, meaning the trial court acted in an arbitrary and unreasonable manner or without reference to guiding principles. *Id.* at 587. We ask first whether the trial court had sufficient information on which to exercise its discretion and second whether it erred in applying its discretion. *Id*. at 588. "An abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision." *Id.* at 587.

2

**Factual and Procedural Summary**

The underlying proceeding arose out of a petition to modify filed by Ulatoski. The trial court held a final hearing in March 2015, in which Warren and Ulatoski testified. Our summary is taken from the pleadings and Warren and Ulatoski's testimony.[1]

B.W. was born in October 2003. When Warren and Ulatoski divorced in 2008, when B.W. was five, they all lived in Texas. The decree named Warren and Ulatoski joint managing conservators and gave Warren the right to determine B.W.'s primary residence with no geographic restriction. Warren testified that he and Ulatoski were both from California and that at the time of their divorce, both still had family and intended to return there. Some time between 2008 and November 2011, Ulatoski remarried, and she and her husband, who is in the Army, had two children, who were six and four years old at the time of the final hearing. Warren also had two younger children, who were two and five at the time of the hearing; Warren has custody of those children, and they have grown up with B.W.

After the divorce was rendered, Ulatoski and her family relocated to California because her husband was stationed at Fort Irwin, California.[2] Warren and B.W. moved to a nearby town in California several months later. In November 2011, the trial court signed an order modifying the 2008 divorce decree. The order recites that Ulatoski filed a petition to modify on September 30, 2009, and that the court found "that the material allegations in the petition to modify are true and

---

[1] Because the evidence related to the parties' circumstances are dispositive of the appeal, we will focus our summary on evidence relevant to that issue alone.

[2] Ulatoski testified that she and her family moved to California in 2010. However, Warren testified that B.W. started kindergarten in California in the fall of 2009, and in her brief, Ulatoski asserts without citation to the record that she and her husband moved to California in 2008.

3

that the requested modification is in the best interest of the child."[3]  The court modified the decree's provisions "govern[ing] the arrangements for the travel of the child to and from [Ulatoski] for Christmas and summer visitations," setting out specifics about B.W.'s travel between her parents' homes.  The court dismissed "all other requests" made in the petition.  Thus, Warren retained the right to designate B.W.'s primary residence without geographic restriction.

In 2011 or 2012, Ulatoski's husband was stationed in Fort Polk, Louisiana, where the family still lived at the time of the final hearing.[4]  Ulatoski testified that Warren and B.W. moved back to Killeen between six and twelve months later.  Warren said that he moved B.W. to Killeen because he wanted her to be closer to Ulatoski but that Ulatoski only did about three or four weekend visits a year, primarily seeing B.W. for summer and holiday visits.  In December 2014, Warren and B.W. moved back to California, where they lived with his father, aunt, and two younger children.

On August 1, 2014, at the end of her summer visit with B.W., Ulatoski filed a petition to modify, asking that she be appointed sole managing conservator and that Warren be appointed possessory conservator or, in the alternative, that she be given the right to designate B.W.'s primary residence.  As grounds for her request, Ulatoski referred to her affidavit, in which she stated:

> On or about July 30, 2014, I discovered that [Warren] is being investigated regarding allegations of sexual assault/sexual abuse against the twelve year old daughter of his paramour/room mate, MIRANDA STARR.  On July 8, 2014, the Texas Department of Family and Protective Services ["CPS"] entered into a Child Safety Evaluation

---

[3] Ulatoski's 2009 petition does not appear in the record, and we therefore do not know what grounds Ulatoski alleged to support a modification or all of the modifications that were sought.

[4] Ulatoski testified that her family moved to Louisiana in 2012, with Warren and B.W. moving to Killeen within the year, but Warren testified that he and B.W. moved to Killeen in 2011.

and Plan with Miranda requiring that all contact with [Warren] and the children in their home be supervised by Miranda.

My daughter, [B.W.], has been with me at my residence for summer visitation and is scheduled to be picked up by [Warren] on Friday, August 1, 2014. I am in fear for the safety of my daughter should she be returned to [Warren's] home due to the allegations of sexual assault/sexual abuse pending against him.

Ulatoski testified at the final hearing that she filed her petition because B.W. "did not want to go back to her dad" and because she learned about the investigation. Ulatoski also testified that about two weeks after she filed her petition, the trial court held a hearing in which a police detective and CPS caseworker testified that they were going to close their respective investigations soon and that Warren's former girlfriend "had made these type allegations before." The court ruled at that time that B.W. could return to Warren's care on August 23, 2014.

Despite the ruling that B.W. could return to his care, Warren asked Ulatoski to keep B.W. until early September so that he could sort out other legal issues, and then he told her in early September "that there was still stuff going on" and that Ulatoski should enroll B.W. in school in Louisiana. Warren explained that he was told not to leave Texas until the CPS and police investigations concluded, which occurred in late September 2014, and that he then was unable to leave the state until he finished classes required by CPS, which did not conclude until late November 2014. As a result of those restrictions, Warren said, he told Ulatoski to keep B.W. in Louisiana "since she's had her all this time," and that he would pick B.W. up at Christmas.

Ulatoski testified that Warren did not visit or pick up B.W. until December 19, 2014, when he picked her up for what he told Ulatoski would be a visit for "a couple of days." However, Warren did not return B.W. within a few days, and so Ulatoski drove from Louisiana to Killeen,

5

arriving on December 23 to find an empty house. Ulatoski testified that when she reached B.W. by phone on Christmas Eve, B.W. was upset because she had been looking forward to spending Christmas with Ulatoski and her family. It was not until early January that Ulatoski learned that B.W. and Warren had moved back to California, and Ulatoski testified that Warren had not informed her of his plans to move, in violation of the decree and the November 2011 modification, and did not provide his new address until the end of January or beginning of February 2015.

Warren testified that B.W. had lived with him all her life except for the six-month period she lived in Louisiana. Warren testified that there had been no material and substantial changes in the parties' relationship or circumstances since the divorce was rendered, explaining that his move back to California did not amount to such a change because he and Ulatoski were both from California, had family there, had planned to return to California, and had in fact lived there since the divorce. Warren testified that B.W. started kindergarten in California and attended school there for three years, then moved to Killeen in 2011, where she attended school until June 2014. She attended school in Louisiana in the fall of 2014, and returned to school in California in January 2015.

B.W. was eleven and one-half at the time of the hearing. The trial court spoke to her at the hearing, and she told the court that she had not had trouble readjusting to school in California, explaining that she had gone to the same school in second grade, that she "knew pretty much everybody there," that she still had friends there, and that she had made new friends. B.W. said she got along well with both of her parents, that she loved her four half-siblings, that her stepfather was nice and treated her well, although she did not talk to him very much, and that she missed her

6

mother and half-siblings. When the court asked what B.W. wanted, she said, "I just wish that my mom could just live closer because she's not around family. Most of the family is in California."

At the conclusion of the hearing, the trial court said:

> [T]his is not an easy case because this is a situation in which it's clear that both parents are good parents. I see nothing to indicate that both of you are not more than capable and willing to do what is in the best interest of your child and have done so in the past, but under the circumstances my ruling is this. I'm going to grant the modification as requested, but I'm going to order that [B.W.] remain in Mr. Warren's home and continue in school in California, because I hear nothing to indicate that that would be a dangerous situation that would in any way endanger her health and well-being, and I want her to finish the school year there.

The court signed an order naming Warren and Ulatoski joint managing conservators, giving Ulatoski the right to designate B.W.'s primary residence without regard to geographic location and giving Warren visitation under the standard possession order. The court issued findings of fact and conclusions of law determining: (1) there had been a material and substantial change in B.W.'s, Warren's, and Ulatoski's circumstances; (2) the material allegations in Ulatoski's petition were true; and (3) Ulatoski's requested modification was in B.W.'s best interest.

**Discussion**

Warren argues that the evidence is legally and factually insufficient to show (1) a material and substantial change in the circumstances of B.W. or either parent or (2) that it is in B.W.'s best interest for Ulatoski to have the right to determine B.W.'s primary residence. *See* Tex. Fam. Code § 156.101(a)(1). He argues that because he and B.W. have returned to California, "there has been no material and substantial change in circumstances in that regard" since the 2011

7

modification order. He also asserts that Ulatoski's move to Louisiana "was anticipated by the parties and thus cannot constitute a material and substantial change," that her move was not substantial, and that the record is unclear about whether B.W.'s half-siblings were born after the 2011 order.

First, we clarify that our inquiry is whether Ulatoski established by a preponderance of the evidence that circumstances have materially and substantially changed since the trial court's last order related to B.W.'s conservatorship, signed in November 2011. Ulatoski asserts that we should be looking to the parties' circumstances in 2008, when the divorce decree was signed, because the November 2011 modification order primarily dealt with travel arrangements for B.W.'s visitation with Ulatoski. However, the 2011 order modified the decree's provisions related to B.W. and was in response to Ulatoski's previous motion to modify. Thus, we compare the parties' circumstances in 2011 to their circumstances at the time of the March 2014 hearing. *See Agraz v. Carnley*, 143 S.W.3d 547, 554 (Tex. App.—Dallas 2004, no pet.) (to prove material change, petitioner must "demonstrate what conditions existed at the time of the entry of the prior order"); *Considine v. Considine*, 726 S.W.2d 253, 254-55 (Tex. App.—Austin 1987, no writ) (by signing prior modification order, trial court "necessarily concluded" that circumstances had materially and substantially changed and that modification was in child's best interest); *see also In re T.W.E.*, 217 S.W.3d 557, 559 (Tex. App.—San Antonio 2006, no pet.) (quoting *Bates v. Tesar*, 81 S.W.3d 411, 421 (Tex. App.—El Paso 2002, no pet.)) (once conservatorship order is signed, res judicata applies to establish what was in child's best interest at time).

In Ulatoski's petition to modify, the only fact asserted as a change in circumstances was that Warren was being investigated due to allegations of sexual assault leveled by his ex-girlfriend. Two weeks after the petition was filed, the trial court held a hearing and learned that the

8

police and the Department believed the allegations to be groundless, that the investigations were going to be closed soon, and that Warren's ex-girlfriend had made similar and baseless allegations in the past. Thus, the only change Ulatoski alleged was disproved, and at no point did she amend her petition to allege other changes.[5] *See Agraz*, 143 S.W.3d at 554 (evidence did not support default order modifying conservatorship because mother's testimony did not prove allegations in petition).

Further, Ulatoski provided little evidence about the parties' circumstances in 2011, and it was her burden to do so. *See Zeifman*, 212 S.W.3d at 589 (in modification proceeding, "a threshold inquiry of the trial court is whether the moving party has met the burden . . . of showing a material and substantial change; otherwise the trial court must deny the motion to modify"); *see also In re M.K.T.*, No. 13-14-00032-CV, 2015 WL 5634318, at *5-6 (Tex. App.—Corpus Christi Sept. 24, 2015, no pet.) (mem. op.) ("record must contain historical evidence of relevant circumstances for comparison in order to determine whether a change has occurred"). Indeed, the only facts that can be gleaned from the record about the parties' circumstances in 2011 are that: the parties had all moved to California; B.W. was going to school in California; Ulatoski had remarried, and her husband was active-duty military; Ulatoski and her husband had had two children; and Warren had had one child with his girlfriend.[6]

---

[5] In addition, Ulatoski never actually testified about how the parties' circumstances had changed in a material and substantial way, although her attorney questioned Warren about his moves, challenging his assertion that the circumstances had not materially changed. *See Anderson v. Carranza*, No. 14-10-00600-CV, 2011 WL 1631792, at *5-6 (Tex. App.—Houston [14th Dist.] Apr. 28, 2011, no pet.) (mem. op.) (petition did not allege specific changes; petitioner testified that she had been remarried for three years, she had had two children, she owned house, and her health had significantly improved; court of appeals held that testimony "does not constitute evidence of material and substantial changes dictating a change in conservatorship").

[6] We base this on the children's ages as testified to by Ulatoski and Warren.

Setting aside the fact that Ulatoski only alleged the investigations by CPS and the police as the material and substantial change supporting modification, and even assuming the evidence presented was sufficient to carry Ulatoski's burden of showing the parties' circumstances in 2011, *see Zeifman*, 212 S.W.3d at 589, this record does not support a conclusion that the circumstances of B.W. or her parents have materially and substantially changed since the 2011 modification order was signed.

At the time of the final hearing, B.W. and Warren had moved back to California after several years in Killeen, B.W. was attending the same school she had attended before moving back to Texas, Warren's younger child had been born, and Ulatoski and her husband had been stationed in Louisiana. Since Ulatoski's husband was active-duty military and thus subject to relocation, her move from California was contemplated by the parties at the time of the 2011 order.[7] *See Hoffman v. Hoffman*, No. 03-03-00062-CV, 2003 WL 22669032, at *6-7 (Tex. App.—Austin Nov. 13, 2003, no pet.) (mem. op.) ("[B]ecause [mother's] move to Pennsylvania was contemplated at the time of the original agreement, its eventuality was not a changed circumstance but an anticipated circumstance and addressed in the original agreement. As a result, the move itself cannot be evidence of a material or substantial change in this case. Therefore, [father] must rely on other evidence of a material or substantial change that could warrant modifying conservatorship to prevent the children from

---

[7] Ulatoski argues that Warren's moves "were not contemplated at the time of the prior order concerning the parent child relationship. This order was entered in 2008. A subsequent order in 2011 did not affect conservatorship and the order concerned long distance travel and the medical [identification] card for the child. Her current husband is active duty military. This marriage took place after the divorce decree in 2008." However, the 2011 order was signed after the parties had moved to California, and by addressing long-distance travel, it clearly did contemplate the fact that Ulatoski and Warren would not always live near each other.

moving to Pennsylvania."); *see also Considine*, 726 S.W.2d at 255-56 (mother's remarriage and move to Canada constituted change under family code but "was not shown to be so material and substantial that the retention of [father] as managing conservator would be injurious to the welfare of the children and the appointment of [mother] as the managing conservator would be a positive improvement for the boys"). B.W. and Warren moved back to Killeen, but Ulatoski did not seek modification based on that move, which Warren testified he made in an effort to enhance Ulatoski's access to B.W., and at the time of the final hearing, B.W. had returned to California and the school she had previously attended. Warren testified, and Ulatoski did not dispute, that after he moved to Killeen to allow Ulatoski easier access to B.W., Ulatoski still largely confined her visitations to holidays and summers, opting to exercise weekend visitation only rarely. Thus, the evidence shows that Ulatoski's time with B.W. will not be significantly and negatively affected by B.W.'s living in California.[8] *See Bates*, 81 S.W.3d at 430 (in considering whether move is material and substantial

---

[8] As explained by our sister court:

Moving a child from one location to another generally results in some change of the circumstances of the child or parents. The issue is whether such change is material and substantial. Some moves, depending on distance and other factors, may not materially alter or interfere with the relationship of the conservators with the child. Deciding whether the move causes a substantial and material change requires intensive examination of the facts of each case. Factors to be considered in such a determination include the distance involved, the quality of the relationship between the noncustodial parent and the child, the nature and quality of the child's contacts with the noncustodial parent, whether the relocation would deprive the noncustodial parent of regular and meaningful access to the child, the impact of the move on the quality and quantity of the child's contact with the noncustodial parent, the motive for the move, the motive for opposing the move, the feasibility of preserving the relationship between the noncustodial parent and the child through suitable visitation arrangements, and the proximity, availability, and safety of travel arrangements.

*In re P.M.G.*, 405 S.W.3d 406, 412 (Tex. App.—Texarkana 2013, no pet.).

11

change, relevant factors include distance, nature and quality of child's contacts with noncustodial parent, and proximity, availability, and safety of travel arrangements). Further, Warren testified that B.W. was doing well in school and making friends; that B.W. had grown up with and was close to his younger children; that he and B.W. had a strong bond; and that living in California allowed B.W. to see her extended family. B.W. said that she had easily readjusted to school in California, still had friends there, and had made new friends. We hold that this record does not support a conclusion that B.W.'s moves away from and back to California were material and substantial changes that would permit a modification to the 2011 order. *See In re H.N.T.*, 367 S.W.3d 901, 905 (Tex. App.—Dallas 2012, no pet.) (at time of divorce, mother lived in Houston and father lived in Grayson County; soon after, mother remarried and moved back to Grayson County with child, where they lived for ten years; when mother decided to return to Houston, father objected and sought geographic restriction, asserting move was material and substantial change; appellate court reversed modification and held evidence did not show material and substantial change because "conditions at both points in time establish that Mother resided in Houston").[9]

Nor do any of the other changes pointed to by Ulatoski amount to material and substantial changes. B.W. was eleven at the time of the hearing, five at the time of the divorce,

---

[9] *See also In re P.M.B.*, 2 S.W.3d 618, 622-23 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (following were not material and substantial changes dictating change in conservatorship: father moved several times and changed jobs, and mother returned from military service overseas, remarried, had another child); *Belford v. Belford*, 682 S.W.2d 675, 676-77 (Tex. App.—Austin 1984, no writ) (father did not meet burden of showing change in circumstances despite evidence showing: both parents had remarried; mother had moved to Missouri; mother had allowed child to remain in Texas after Christmas visit, living with grandparents and attending school in Garland; grandparents in Texas could finance child's musical education).

and eight when the earlier order was signed, but the mere fact that B.W. is older cannot support modification. *See Zeifman*, 212 S.W.3d at 593 ("Increase in age alone is not a changed circumstance to justify modification unless changed needs are shown."); *see also Wiese v. AlBakry*, No. 03-14-00799-CV, 2016 WL 3136874, at *4 (Tex. App.—Austin June 1, 2016, no pet. h.) (mem. op.) (increase in child's age is typically anticipated by trial court in drafting original custody orders); *In re C.R.G.*, No. 05-10-01472-CV, 2012 WL 3133785, at *3-4 (Tex. App.—Dallas Aug. 2, 2012, no pet.) (mem. op.) (mother did not carry burden of proving material and substantial change where evidence was only that child was fifteen years older and had expressed desire to deny father's visitation; appellate court noted that trial court did not make findings as to child's needs or explain changed circumstances and stated only that father's possession had become unworkable). Warren's youngest child was born since 2011, but the three older half-siblings were all born before. Ulatoski remarried before the 2011 order was signed. There is no evidence that B.W. has needs that are not being or cannot be met in California as opposed to Louisiana. Ulatoski asserts that B.W. has moved too much, but her sought modification would also require a move. Stability is an important consideration in conservatorship and custody determinations, *Child v. Leverton*, 210 S.W.3d 694, 698 (Tex. App.—Eastland 2006, no pet.), and in this case, B.W. had lived with Warren since 2008, when the parties divorced; had stayed with him until the time of the hearing, other than about six months that she spent in Louisiana; and had returned to California, where she had begun school years before, already had friends, and had extended family and the two half-siblings with whom she had grown up, *see In re H.N.T.*, 367 S.W.3d at 905.

13

We hold that Ulatoski did not carry her burden of establishing material and substantial changes in the parties' circumstances between November 2011 and March 2014 and that the evidence was legally insufficient to support the trial court's modification order. We sustain Warren's third issue, and due to our resolution, need not address Warren's remaining issues.

## Conclusion

The trial court abused its discretion in granting Ulatoski's petition to modify. We therefore reverse the trial court's order and render judgment denying Ulatoski's petition to modify the parent-child relationship.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Field

Reversed and Rendered

Filed: August 11, 2016