

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-21-00044-CV

---

IN THE INTEREST OF N.C., A CHILD

---

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 93,234-D-FM, Honorable Carry Baker, Associate Judge, Presiding

---

July 28, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Mother, appeals the trial court's judgment arising out of a termination suit brought by the Texas Department of Family and Protective Services.[1] In her sole issue Mother contends that the trial court erred in appointing Father as the permanent managing conservator of N.C. Because we conclude the trial court did not abuse its discretion, we affirm the trial court's order.

---

[1] To protect the privacy of the parties involved, we refer to the child by initials and to the parents of the child as "Mother" and "Father." *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2020); TEX. R. APP. P. 9.8(b).

Background

The child the subject of this appeal is five-year-old N.C. N.C.'s parents, Mother and Father, lived together for five years after N.C. was born, but they were never married. Mother's six-year-old son, J.E., also lived in the home. Mother and Father had recently separated when the Texas Department of Family and Protective Services became involved with the family in May of 2019.

The Department opened an investigation after receiving a report alleging that Mother was neglectful in her supervision of N.C. and J.E. The report alleged that Mother struck and injured Father with her automobile after a brief altercation at Father's place of employment. Both children were in the vehicle with Mother when the incident occurred. Mother was subsequently arrested for aggravated assault with a deadly weapon. She pled guilty to the third-degree felony offense of assault family violence on a household member with a previous conviction and was placed on two years' community supervision.

After Mother's arrest, the children were removed from Mother's care and the Department filed its petition for protection, conservatorship, and termination of parental rights as to both children.[2] Mother initially named a man who was deceased as N.C.'s father. However, the Department learned that a birth certificate and acknowledgement of paternity existed and N.C.'s biological father was contacted. Father was named as an alleged father in the Department's amended petition filed in August. Thereafter, the trial court ordered an expedited home study of Father's home, which was denied. N.C. and

---

[2] J.E.'s father was incarcerated. At some point, the trial court ordered the proceedings involving J.E. and his father severed from the current proceeding.

J.E. were placed with J.E.'s paternal grandparents. The Department implemented separate family service plans for Mother and Father with a goal of reunification.

The trial court conducted a final hearing in this case on December 15, 2020. The caseworker testified that Father's home study was denied "mainly" because of the person Father was residing with at the time. By the time of the final hearing, the majority of the Department's concerns noted in the home study were satisfied in that a person living with Father had moved, he acquired a smoke alarm and carbon monoxide detector, he removed a gun from his home, and he obtained a booster seat and car insurance.

The caseworker testified that N.C. was having unsupervised contact with Mother and Father, the visits with each parent were going well, and both parents had completed their service plans. Father had overnight, weekend visits with N.C. every week, and Father, grandparents, and N.C. all reported that N.C. enjoyed the visits with Father. Mother had a four-hour period of visitation with N.C. each week. The caseworker testified that both parents were employed and had suitable homes for N.C.

The caseworker expressed concerns that if N.C. were placed with Mother, she would deny Father access to N.C. because Mother had done so in the past, citing Mother's dislike for Father, Mother's recent statements that she did not want N.C. around Father, and Mother's lack of improvement in her relationship with Father since the case began. The caseworker recommended that N.C. be placed with Father and that he be named the permanent managing conservator because he was the "non-offending" parent in the incident leading to the Department's involvement and he had completed his services.

At the time of trial, J.E. had been returned to Mother's home and she had almost completed her felony probation. Mother receives disability income for a hearing impairment, and she also has a full-time job. Mother testified that N.C. should live with her because N.C. loves her and "she wants to live with me. [N.C.] cries when she has to leave and go back to her current home." According to Mother, she has raised N.C. and knows that N.C. "would be most content" living with her. Mother also testified that she will co-parent with Father and get along for the sake of N.C. Mother wants N.C. and J.E. to maintain a close relationship and she believes that it is best for them to stay together.

Father was honorably discharged from the United States Army. He is currently employed at Toot-n-Totum Car Care and he has sufficient income to support N.C. without receiving child support. He also has health insurance available for himself and N.C. Father is a diabetic and he recently had gallbladder surgery. He lives in a two-bedroom apartment ten to twelve blocks from Mother's home. He has a fourteen-year-old son from a prior relationship who he sees on the weekends. His son and N.C. have a good relationship; they enjoy bowling and playing video games.

After Father and Mother separated in January of 2019, they agreed that N.C. would live with Mother. According to Father, Mother made his visitation difficult because she would not allow him to come to her apartment. Father no longer agrees that N.C. should live with Mother because she assaulted him with her vehicle, she has a temper, and he is concerned that N.C. will learn bad habits from Mother.

Father testified that when he arrives for visitation with N.C., "her face lights up." At the conclusion of their visit, N.C. gives him "a goodbye kiss, a goodbye hug, you know,

4

we show each other the sign for I love you." He is teaching N.C. to "sign" to help N.C. communicate with Mother and "to have a decent relationship" with her. He "teache[s] N.C. as much as [he] can." If he cannot teach her the right word, he will locate a YouTube video.

In his closing remarks, the guardian ad litem stated that he believed both parents were capable of taking care of N.C. and that both households were safe and adequate for N.C. However, he expressed concern about Mother's conduct that led to the Department's involvement. He recommended that Father be named as N.C.'s primary conservator.

The trial court appointed Father as permanent managing conservator of N.C. with a residency restriction to Potter or Randall County. The court appointed Mother as a possessory conservator and granted her a standard possession order. The court dismissed the Department. Mother timely appealed the trial court's order.

Standard of Review

We review a conservatorship decision for an abuse of discretion. *Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex. 1982); *In re A.M.,* 604 S.W.3d 192, 196 (Tex. App.—Amarillo 2020, pet. denied). A trial court abuses its discretion when it acts arbitrarily and unreasonably and without reference to guiding principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985). The trial court's exercise of discretion will withstand appellate scrutiny unless clearly abused. *In re A.D.T.,* 588 S.W.3d 312, 319 (Tex. App.—Amarillo 2019, no pet.); *In re Marriage of Hamer,* 906 S.W.2d 263, 265 (Tex. App.—Amarillo 1995, no writ). In our review, legal and factual

sufficiency challenges to the evidence are not independent grounds of error, but are relevant factors in assessing whether the trial court abused its discretion. *In re P.M.G.,* 405 S.W.3d 406, 410 (Tex. App.—Texarkana 2013, no pet.). An appellate court applies a two-prong analysis when it determines whether legal or factual insufficiency has resulted in an abuse of discretion: (1) whether the trial court had sufficient information upon which to exercise its discretion, and (2) whether the trial court erred in applying its discretion. *Child v. Leverton,* 210 S.W.3d 694, 696 (Tex. App.—Eastland 2006, no pet.). The sufficiency review is related to the first inquiry. If it is revealed in the first inquiry that there was sufficient evidence, then we must determine whether the trial court made a reasonable decision, and that involves a conclusion that the trial court's decision was neither arbitrary nor unreasonable. *Id.* It is not an abuse of discretion if some evidence of a substantive and probative character exists to support the trial court's decision. *Bates v. Tesar,* 81 S.W.3d 411, 424-25 (Tex. App.—El Paso 2002, no pet.).

Because of the fact-intensive nature of reviewing custody issues, an appellate court must afford great deference to the factfinder on issues of credibility and demeanor because the child's and parent's behavior, experiences, and circumstances are conveyed through words, emotions, and facial expressions that are not reflected in the record. *Chavez v. Chavez,* 148 S.W.3d 449, 458 (Tex. App.—El Paso 2004, no pet.).

Applicable Law

In determining conservatorship and possession issues, the best interest of the child shall always be the primary consideration. TEX. FAMILY CODE ANN. § 153.002 (West

2014). We review a trial court's best-interest finding by using the well-established *Holley* factors. *Holley v. Adams,* 544 S.W.2d 367, 371-72 (Tex. 1976).

Analysis

In her sole issue, Mother contends the trial court abused its discretion in appointing Father as the permanent managing conservator of N.C. Based on our review of the evidence, we cannot say the trial court abused its discretion.

Here, the record provides ample evidence to show that Father had the ability to meet the present and future emotional and physical needs of N.C. Father was involved with N.C.'s education and he fostered N.C.'s relationship with Mother by teaching N.C. to use sign language so that she could improve her communication with Mother. Father was gainfully employed, had a home for N.C., and was ready for N.C. to live with him. The caseworker also testified that Father's home was appropriate for N.C. and recommended the court appoint Father as N.C.'s managing conservator.

From the beginning of the Department's involvement, Father has shown a willingness and ability to effect positive environmental and personal changes in furtherance of N.C.'s care and well-being. He satisfactorily completed his family plan of services and at the time of the final hearing, Father had alleviated the Department's concerns noted in his home study. This evidence indicates that Father could satisfy N.C.'s present and future emotional and physical needs and could provide a stable home for N.C. *See In re K.C.,* 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.) (child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount consideration in determining best interest).

Further, Father participated in visits with N.C. during the pendency of the case, and the amount of time he was allowed to spend with N.C. increased over time. N.C. enjoyed her visits with Father, she was bonded with him, and they had a loving relationship. *In re A.J.A.R.,* No. 14-20-00084-CV, 2020 Tex. App. LEXIS 5789, at *18 (Tex. App.—Houston [14th Dist.] July 24, 2020, pet. denied) (mem. op.) (bond between parent and child important consideration in best interest determination). At visits, N.C. was excited to see Father; she hugged him, kissed him, and they engaged in family activities.

In contrast, the trial court heard evidence that Mother has a temper, she was not supportive of Father's relationship with N.C, and she has a history of assaultive conduct. N.C. and J.E. were present in the vehicle when Mother assaulted Father and injured him with her vehicle. At the time of final hearing, Mother was under a community supervision order as part of a plea-bargain agreement for the disposition of the family violence assault charge. This was Mother's second conviction for family violence. "Domestic violence, want of self[-]control, and propensity for violence may be considered as evidence of endangerment." *In re J.I.T.P.,* 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *see also In re U.H.R.,* No. 07-18-00318-CV, 2019 Tex. App. LEXIS 22, at *12 (Tex. App.—Amarillo Jan. 2, 2019, no pet.) (mem. op.) (parent's abusive conduct can produce an environment that threatens a child's well-being).

The trial court was in the best position to observe the demeanor and personalities of the witnesses and was able to "'feel' the forces, powers, and influences that cannot be discerned by merely reading the record." *Bell v. Campbell*, 328 S.W.3d 618, 620 (Tex. App.—El Paso 2010, no pet.). We defer to the trial court's determinations regarding the

credibility of the witnesses. As sole judge of the weight and credibility of the evidence, the trial court was entitled to determine which evidence to credit and, in doing so, could reasonably conclude that it was in N.C.'s best interest that Father be appointed her permanent managing conservator.

Indulging every reasonable inference that would support the trial court's finding, we conclude that the trial court had sufficient evidence to support its decision. The court did not act unreasonably, arbitrarily, or without reference to any guiding rules or principles by naming Father the permanent managing conservator; therefore, the trial court did not abuse its discretion. Accordingly, we overrule Mother's sole issue and affirm the trial court's judgment.

## Conclusion

Finding no abuse of discretion, we overrule Mother's sole issue and affirm the trial court's judgment.

Judy C. Parker
Justice